IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

JAMES BLANKENSHIP,

                  Petitioner,       :       Case No. 2:18-cv-640

   - vs -                             District Judge Michael H. Watson
                                         Magistrate Judge Michael R. Merz

NORMAN ROBINSON, WARDEN,
  London Correctional Institution,

                                    :

                  Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner James Blankenship under 28 U.S.C. § 2254, is before the Court for decision on the merits on the Petition (ECF No. 1), the State Court Record (ECF No. 4); the Return of Writ (ECF No. 5); and Petitioner's Reply (ECF No. 12). The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the workload in the District (ECF No. 13).

**Litigation History**

On July 24, 2015, the Delaware County, Ohio, Grand Jury indicted Petitioner on one count of engaging in a pattern of corrupt activity Ohio Revised Code § 2923.32(A)(1) (Count 1); ten counts of breaking and entering in violation of Ohio Revised Code § 2911.13(A)(Counts 2, 4, 5, 7-9, and 11-14); and three counts of safecracking in violation of Ohio Revised Code § 2911.31(A) (Count 3, 6, 10) (State Court Record, ECF No. 4, Ex. 1, PageID 23-30). Count Thirteen was

dismissed on motion for acquittal and Count Fourteen was not presented to the trial jury, which convicted Blankenship on all the remaining counts. *Id*. at Ex. 3, PageID 33-34. He was then sentenced to nine and one-half years imprisonment, the term he is now serving. The Fifth District Court of Appeals affirmed, except for a remand to properly impose post-release control. *State v. Blankenship,* No. 16 CAA 0024, 2017-Ohio-7267 (5th Dist. Aug. 16, 2017); appellate jurisdiction declined, 151 Ohio St. 3d 1512 (2018) ("*Blankenship I*"). Subsequently, Blankenship filed an Application to Reopen his direct appeal under Ohio R. App. P. 26(B) on grounds his appellate counsel should have raised an insufficiency of the evidence claim (State Court Record, ECF No. 4, Ex. 16, PageID 168-77). The Fifth District declined to reopen the appeal (*State v. Blankenship*, No. 16 CAA 06 0024 (5th Dist. Dec. 26, 2017) unreported, copy at State Court Record, ECF No. 4, Ex. 18, PageID 202-08 ("*Blankenship II*")), and the Supreme Court of Ohio again declined appellate jurisdiction. 152 Ohio St. 3d 1449.

Blankenship then filed his Petition in this Court pleading three grounds for relief:

> **Ground One:** There was insufficient evidence submitted to the jury to sustain a conviction as to Count VII of the indictment.
>
> **Supporting Facts:** The State failed to present any evidence at all that the Defendant, or any of his alleged co-conspirators, committed a breaking and entering at the Delaware County Humane Society as alleged in Count VII of the indictment. The complete lack of any direct or circumstantial evidence in support of the conviction makes it constitutionally unsound. The State's case on this Count of the indictment is supported only by speculation and conjecture and not by any evidence at all.
>
> **Ground Two:** There was insufficient evidence that any criminal conduct occurred in Delaware County, Ohio and the State of Ohio failed to provide any evidence that Delaware County had jurisdiction over this case.
>
> **Supporting Facts:** The State of Ohio tried this case in Delaware County, Ohio but it failed to provide any evidence that Blankenship committed any crime in Delaware County, nor did the State present

2

any evidence that Blankenship knew of, conspired with, or had any associate engage in any criminal conduct in Delaware County, Ohio. There was insufficient evidence to try the Defendant in Delaware County. Because the State failed to provide any evidence that venue was proper in Delaware County, the Petitioner was denied Due Process of Law when he was tried in Delaware County, Ohio.

**Ground Three:** The Petitioner received ineffective assistance of counsel on appeal in violation of the Sixth Amendment to the U.S. Constitution.

**Supporting Facts**: Petitioner received ineffective assistance of counsel in his direct appeal when appellate counsel failed to argue that the state failed to present sufficient evidence that the Petitioner engaged in any enterprise or pattern of corrupt activity as defined by the state RICO statute. Appellate counsel filed to raise a meritorious assignment of error that would have resulted in reversal and the Petitioner was prejudiced as a result.

(Petition, ECF No. 1, PageID 5, 6, 8.)

The Warden does not raise any affirmative procedural defenses, but defends the conviction on the merits (Return, ECF No. 5, PageID 282-83).

**Ground One: Insufficient Evidence on Count Seven**

In his First Ground for Relief, Blankenship asserts there was insufficient evidence to convict him on Count Seven of the Indictment. That Count charged Blankenship with breaking and entering the Delaware County Humane Society at a given address in Delaware, Ohio. *Blankenship I*, 2017-Ohio-7267, at ¶¶ 17-18, citing State Court Record, ECF No. 4, Ex. 1, PageID 26). The Fifth District Court of Appeals reviewed this claim under the appropriate United States Supreme Court precedent, *Jackson v. Virginia*, 443 U.S. 307 (1979).

The appellate court decided this claim, along with Blankenship's claim that his conviction was against the manifest weight of the evidence, on direct appeal and held:

{¶ 26} To be convicted of breaking and entering pursuant to R.C. 2911.13(A) the trier of fact would have to find beyond a reasonable doubt that Blankenship by force, stealth, or deception trespassed in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.

{¶ 26} On February 10, 2015, Deputy Robert Curren responded to the Delaware County Humane Society at approximately 1:16 a.m. A loud, audible alarm had been tripped. He had been dispatched when the Vector alarm company called to report a possible break-in at that location. Upon his arrival, he located a door that had pry marks and evidence of forcible entry. Part of the dead bolt was lying on the ground and the door was ajar. Deputy Curren walked through the business, took photographs of the damage, and made contact with the key holder Misty Bay.

{¶ 28} Ms. Bay testified that she was a manager at the Delaware County Humane Society. After she received a call regarding a suspected break-in from Vector security, she went to the location. She arrived approximately twenty-five minutes after the alarm. After Deputy Curren cleared the building, she walked through and discovered that the east wing cat door had been broken. She discovered that some file cabinets and drawers had been pulled out in the lobby, two of the dogs were not in their kennels and a set of keys were not on the hook where they were customarily located.

{¶ 29} Ms. Bay testified that it appeared someone had forced entry, searched the building, and moved property. Ms. Bay testified that she ultimately found nothing to be missing. Ms. Bay testified there were motion sensors inside the business. She was able to determine that the suspects entered through the east wing door, then moved throughout the shelter, and ultimately exited through the dog room door. She testified the damage present on the doors was not present prior to the break-in. She was further able to tell by the timing of the security codes that the suspects were only in the shelter for perhaps five minutes. Finally, she testified no one had authority to enter the shelter on the date in question and no one had permission to cause the damage.

{¶ 30} A witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator. *See, State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991); *United States v. Boyd*, 447 Fed.Appx. 684, 690 (6th Cir. 2011)

(collecting examples of when "in-court identification is not required").

**{¶ 31}** ["]Circumstantial evidence is defined as 'testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.'" *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), *quoting* Black's Law Dictionary 221 (5th Ed.1979). "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. "'[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75, *quoting State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

**{¶ 32}** "For other-acts evidence to be admissible to prove identity, the 'other-acts evidence must be related to and share common features with the crime in question.'" *State v. Massey*, 10th Dist. No. 99AP-1355, 2000 Ohio App. LEXIS 5503, 2000 WL 1742072 (Nov. 28, 2000), *quoting State v. Lowe*, 69 Ohio St.3d 527, 1994 Ohio 345, 634 N.E.2d 616 (1994), paragraph one of the syllabus. Evidence of other acts is admissible to prove identity if there is "substantial proof that the alleged other acts were committed by the defendant." *Lowe* at 530, 634 N.E.2d 616. *See also State v. Parnell*, 10th Dist. No. 11AP-257, 2011-Ohio-6564, 2011 WL 6647293, ¶ 31. Also, Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is permitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, of the absence of mistake or accident. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818.

**{¶ 33}** In the case at bar, ample circumstantial evidence existed to allow the jury to conclude that Blankenship and Creech were the individuals who gained access to the Delaware County Humane Society on February 10, 2015.

**{¶ 34}** Beginning on January 19, 2015, break-ins began to occur in animal shelters and humane societies. By February 18, 2015, sixteen such establishments had been broken into in sixteen different counties in the state. Some of the premises had video surveillance, which consistently showed two males with their faces covered inside the buildings. In some pictures, a white car similar to Blankenship's could be seen in the vicinity. Either Blankenship's or Creech's cell phones were determined to be in the vicinity at the

time of approximately eight of the break-ins. Creech was in possession of an orange walkie-talkie at the time of his arrest. Creech testified that they tried using the walkie-talkies to communicate with the driver during the break-ins. (T. at 696). Surveillance footage from the Knox County break-in showed a suspect with an orange walkie-talkie. (1T. at 99).

{¶ 35} Toni Beers testified that she was Creech's girlfriend and the couple lived with Blankenship during the time that the break-ins were occurring. Neither Beers, Creech, nor Blankenship was working at the time. However, Blankenship and Creech would pay the bills. Blankenship and Creech would leave the residence around 9:00 p.m. and return around 3:00 a.m. on many days. In exchange for a guarantee of immunity from prosecution by the state, Beers testified that on several days she went with them. Blankenship and Creech would break in to humane society buildings. That was the only type of business they broke into while she was present. She would drive them to various humane societies in Blankenship's white Grand Prix on some occasions, drop them off, and pick them up after the commission of the offense. When they signaled her to pick them up, they would often have money, medication, and pills.

{¶ 36} Beers testified that they were living in Morrow County at the time of the offense and hit pretty much all of the adjoining counties around Morrow County at some point. While Ms. Beers was able to specifically recall driving Blankenship and Creech to the Ashland County and Marion County animal shelters, she could not recall all of the others. Finally, she testified she went out with Creech and Blankenship approximately five to seven times, but Creech and Blankenship went out "a lot" without her to break into businesses.

{¶ 37} Similarly, Creech testified that he was charged, pled guilty, and was sentenced by Delaware County for his involvement in this case. He testified to breaking into dog pounds and car washes during the relevant period. The following exchange took place during Blankenship's jury trial between the prosecutor and Creech,

> Q. Let's talk about your Delaware case here then if we can. What did you do that caused you to get charged with a number of offenses in that case?
> A. Breaking into dog pounds and car washes.
> Q. Okay. And were dog shelters and dog pounds and car washes the only places you broke into during that time?
> A. Yes.
> Q. Do you recall some of the counties that you broke into businesses in?

> A. Hardin County, Morrow County, Marion County. I did Delaware County.
>
> 4T. at 684-685. Further, Creech testified,
>
> Q. And what did you go to prison for?
> A. I went to prison out of Morrow County for burglary and Delaware County breaking and entering.

4T. at 683.

Creech testified that after they had tried the break-in in Morrow County he and Blankenship decided to keep going. (4T. at 687-688). They began to drive further outward in search of dog shelters to break-in. Creech testified that Toni Beers would accompany him and Blankenship to break-ins on occasion. Creech testified that he and Blankenship broke into the Hardin County animal shelter and stole a dog during the process because Blankenship wanted the animal. (4T. at 690). Creech plead guilty to the break-in of the Delaware County Humane Society. (See, State's Exhibit 20; 4T. at 701).

{¶ 38} In the case at bar, the break-ins involved a unique type of establishment. They further occurred over a short period. Each offense involved a similar modus operandi. Creech and Beers each admitted to committing a number of the break-ins and were unsure as to others. Corroborating evidence as to the identity of the perpetrators was presented in the form of cellular telephone records that pinpointed the location of Blankenship and Creech near the location of several of the break-ins at or near the time of the break-in. Identification of a vehicle matching the description of Blankenship's car at several of the sites was presented. Two humane societies in different counties were broken into on January 19, 2015. Two more in different counties were broken into on the same night on February 13, 2015. Three humane societies in different counties were broken into on February 15, 2015. Two humane societies in two different counties were broken into on February 16, 2015. The break-ins of humane society's and animal shelters appear to have stopped with the arrest of Creech and Blankenship. From this evidence, the jury could find proof of motive, opportunity, intent, preparation, plan, knowledge, and identity were the same or similar for all of the break-ins.

{¶ 39} Competent, credible evidence was presented when viewed in the light most favorable to the prosecution, that provides sufficient circumstantial evidence that Blankenship was a participant in the break-in of the Delaware County Humane Society on February 10, 2015. We hold, therefore, that the state met its burden of production

regarding each element of the crime of breaking and entering and, accordingly, there was sufficient evidence to support Blankenship's conviction on Count VII of the Indictment.

**{¶ 40}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 Ohio App. LEXIS 15233, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 10 Ohio B. 408, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002-Ohio-3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St .2d 230, 10 Ohio St. 2d 230, 227 N.E.2d 212(1967).

**{¶ 41}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶ 42}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d

955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶ 43}** Although Creech testified at trial that he did not believe he had committed the break-in of the Delaware County Humane Society, the jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. The jury was also aware that Creech had pled guilty to the break-in of the Delaware County Humane Society. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 2000 Ohio App. LEXIS 1138, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra*.

**{¶ 44}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Blankenship of the charge.

**{¶ 45}** Based upon the foregoing and the entire record in this matter, we find Blankenship's conviction on Count VII of the Indictment was not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Blankenship and his witnesses. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Blankenship's guilt.

> **{¶ 46}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime beyond a reasonable doubt.
>
> **{¶ 47}** Blankenship's First and Second Assignments of Error are overruled.

*Blankenship I,* 2017-Ohio-7267.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson,* 443 U.S. 307; *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990) (en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, No. 3:03-po-02, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio Oct. 12, 2007) (Rice, J.). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship* 397 U.S. at 364.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) (the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson*, and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Parker v. Matthews*,

567 U.S. 37, 43 (2012) (per curiam); accord *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011) (en banc), quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).. Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012) (per curiam); accord *Parker*, 567 U.S. at 43.

Blankenship argues at length that the Fifth District unreasonably applied *Jackson* (Traverse, ECF No. 12, PageID 1383-90). The question is whether, construing the evidence most favorably to the prosecution, any reasonable juror could have found Blankenship guilty.

Blankenship correctly asserts there was no eyewitness identification of him as a person who broke into the Delaware County Humane Society. In fact, the Fifth District found identification was based on circumstantial evidence. But there was uncontroverted direct evidence that a break-in did occur on the date charged. *Blankenship I*, 2017-Ohio-7267, at ¶ 39. Blankenship argues there was "no physical evidence," (Traverse, ECF No. 12, PageID 1387), but whether the pried-door or lock was shown to the jury or the prosecution settled for descriptive testimony by the manager, there surely was physical evidence of a break-in.

There was ample evidence that Corby Creech, who lived with Blankenship, participated in

12

a number of very similar break-ins (all animal shelters) in a short period of time (one month) and that he and Blankenship were co-conspirators in this pattern of crime; this evidence came from both Creech and his girlfriend, Toni Beers, who lived with Blankenship and was a co-participant in some of the crimes.

As Blankenship emphasizes, Creech's testimony at trial was that he did not believe he had participated in the Delaware County break-in (Traverse, ECF No. 12, PageID 1387). However, he admitted to participating in other humane society break-ins with Blankenship and he had pleaded guilty to the Delaware County break-in. *Blankenship I*, 2017-Ohio-7267, at ¶¶ 37-38. The jury was entitled to believe his guilty plea instead of his trial testimony.

Blankenship emphasizes that there was no video surveillance from which he was identified at the Delaware County site (Traverse, ECF No. 12, PageID 1387). However, he does not dispute the accuracy of the Fifth District's findings that (1) there was video surveillance at some of the sites, and (2) that video surveillance consistently showed two male participants.[1] *Blankenship I*, 2017-Ohio-7267, at ¶ 34. Blankenship argues there was no evidence to locate his cell phone in Delaware County at the time of the break in. Indeed the Fifth District noted cell phone proximity in only eight of the sixteen break ins. *Id*. But if Blankenship's cell phone, presumably on his person, was near half the break ins at animal shelters in a one month period, it is a reasonable inference that he was present at the other half. The case is not about break-ins at random unoccupied buildings over an extended period of time, but at a particular kind of building sixteen times in a one month period.

The Fifth District noted that Creech was arrested in possession of an orange walkie-talkie

---

[1] Blankenship notes that the two participants had their faces covered and asks how it could be determined they were male (Traverse, ECF No. 12, PageID 1386, citing Return of Writ, ECF No. 5, PageID 296). There are of course many clues from a picture of the human body from which it is possible to infer gender. The inference may be mistaken for many reason, but the inference is not irrational.

13

which he testified they used to try to communicate with their driver and which is shown in video surveillance at the Knox County break-in. *Blankenship*, 2017-Ohio-7267. Blankenship argues no orange walkie-talkie was tied to the Delaware County break-in (Traverse, ECF No. 12, PageID 1387), but he misses the point: Creech was his confessed co-conspirator, also identified by Beers, in a number of other animal shelter break-ins during that month. Given the testimony of the two co-conspirators and the strikingly similar pattern of the crimes, it was not irrational for the jury to draw the inference that Blankenship participated in the Delaware County break-in.

Blankenship argues that the State's case requires the unconstitutional "stacking" of inferences (Traverse, ECF No. 12, PageID 1384, citing *State v. Palmer,* 80 Ohio St. 3d 543, 561 (1997)). Under Ohio law, "A trier of fact may not draw an inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts. However, an inference based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in." *State v. Cowans,* 87 Ohio St. 3d 68, 78 (1999) (internal quotations omitted), *quoting Hurt v. Charles J. Rodgers Transp. Co.,* 164 Ohio St. 329, 332 (1955). Whether or not the inferences in this case count as "stacking" or "parallel," there has never been an applicable federal constitutional rule and this habeas court sits only to remedy federal constitutional violations.

Blankenship relies on an asserted distinction between "reasonable speculation" and sufficient evidence (Traverse, ECF No. 12, PageID 1389, citing *Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir. 1981)). In that case the question was whether the habeas petitioner was complicit in a felony arson which resulted in death. *Fuller*, 662 F.2d at 424. It is clear from the opinion that the habeas court evaluated the evidence *de novo* to conclude it was insufficient. As noted above, that it no longer permissible in habeas after adoption of the AEDPA. Instead, we must defer to the

14

state court conclusion.

Even if we were to engage in de novo review, Blankenship would not be entitled to relief. In *Fuller*, Judge Keith noted:

> Moreover, there was no direct evidence that the youths approached the Turner house with intent to set the house on fire. Assuming Zerious Meadows had this intent, however, there was no evidence that it was shared by petitioner or the other boys.
>
> The only direct evidence supporting the State's contention that Fuller "stood guard and acted as a lookout" for Zerious Meadows was Jefferey Coleman's testimony that over a period of several minutes Fuller turned his head from side to side "more than twice." We agree with the district court that this is insufficient to establish beyond a reasonable doubt that Fuller took conscious action to aid Meadows' commission of arson.

662 F.2d at 424. In this case there is ample evidence of a conspiracy among three people to break in to county animal shelters and of sixteen of such break-ins within a month. There is uncontroverted evidence that one such break-in was in Delaware County and that the pattern involved Creech and Blankenship doing the break-ins. The animal shelter break-ins stopped once Creech and Blankenship were arrested, again supporting the inference that they, and only they, were the perpetrators in Delaware County.

Blankenship's First Ground for Relief is without merit.


**Ground Two: Insufficient Proof of Venue**


Blankenship has voluntarily withdrawn Ground Two on his admission that it does not state a claim of a constitutional violation (Traverse, ECF No. 12, PageID 1390). Independently of his admission, the Magistrate Judge has reached the same conclusion. Blankenship was charged with and convicted of crimes against the State of Ohio. For federal constitutional purposes, the

15

jurisdiction of the State extends to all crimes any element of which was committed anywhere in the State.

**Ground Three: Ineffective Assistance of Appellate Counsel**

In his third Ground for Relief, Blankenship asserts he received ineffective assistance of appellate counsel when his appellate attorney did not raise as an assignment of error that there was insufficient evidence to convict him of violating the Ohio RICO Act, Ohio Revised Code § 2923.32(A)(1) (Traverse, ECF No. 12, PageID 1390).

Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to the effective assistance of counsel at trial and on any direct appeal of right. *Gideon v. Wainright*, 372 U.S. 335 (1963). The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694; see also *Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987); see generally Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* If a reasonable probability exists that the

defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson*

Blankenship raised this claim in an Application to Reopen his direct appeal under Ohio R. App. P. 26(B) (State Court Record, ECF No. 4, Ex. 16, PageID 168, et seq.). The Fifth District decided this claim on the merits, applying the two-prong *Strickland* test. *Blankenship II*, State Court Record, ECF No. 4, PageID 204-08. The question before this Court then, as with Ground One, is whether the Fifth District's decision is an objectively unreasonable application of *Strickland*.

Blankenship asserts "[t]he crux of this criminal case is whether or not a conspiracy existed between the involved parties or whether these were random disorganized crimes that fail to rise to the level of organized crime." (Traverse, ECF No. 12, PageID 1391). The Fifth District acknowledged that in order to convict Blankenship on the State RICO charge, the State had to prove the existence of an "enterprise." However, "'[t]he existence of an enterprise, sufficient to sustain a conviction for engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1), can be established without proving that the enterprise is a structure separate and distinct from a pattern of corrupt activity.'" *Blankenship II*, State Court Record, ECF No. 4, PageID 205-06, quoting *State v. Beverly,* 143 Ohio St. 3d 258, 2015-Ohio-219, paragraph one of the syllabus. Reciting the pattern of corrupt activity which was proved at trial, the Fifth District concluded it was sufficient to satisfy the statute. *Id.* at PageID 208. Since the assignment of error asserting insufficient evidence would have been unsuccessful, there was no ineffective assistance of appellate counsel in failing to raise it. *Id.*

To the extent Blankenship relies on federal case law interpreting the federal RICO statute

as requiring a separate "structure" for a RICO violation, those precedents are unavailing. The proper construction of Ohio Revised Code § 2923.32 is a question of state law. The Fifth District, quoting *Beverly*, found that Ohio employs a different standard, and that construction is binding on this Court. *Bradshaw v. Richey*, 546 U.S. 74 (2005).

Contrary to Blankenship's argument that there was no enterprise, there was testimony that the three co-conspirators lived together in the same household continuously during the period of the sixteen crimes, that the crimes followed a remarkably parallel pattern (time of day, identity of target, etc.). *Blankenship*, 2017-Ohio-7267, ¶¶ 36, 38. There was further testimony from Beers that Blankenship and Creech paid the bills of the household but neither was gainfully employed in a legitimate job. *Id*. at ¶ 35.

The best proof that there was no ineffective assistance of appellate counsel here is that the same court which had recently evaluated the evidence in the case concluded that the proposed assignment of error would not have been persuasive. This is not a case where appellate counsel chose among a number of possible assignments of error and misevaluated one which could have been persuasive.

Blankenship's Third Ground for Relief is without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to

19

proceed *in forma pauperis*.

April 29, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).