IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

JAMES BLANKENSHIP,

     Petitioner,  :  Case No. 2:18-cv-640

 - vs -         District Judge Michael H. Watson
            Magistrate Judge Michael R. Merz

NORMAN ROBINSON, WARDEN,
 London Correctional Institution,
             :
     Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner James Blankenship under 28 U.S.C. § 2254, is before the Court on Petitioner's Objections (ECF No. 17) to the Magistrate Judge's Report and Recommendations recommending that the Petition be dismissed (the "Report," ECF No. 14). Judge Watson has recommitted the case for reconsideration in light of the Objections (ECF No. 18).

**First Objection: Insufficient Evidence to Convict of Delaware County Break-In**

Blankenship was indicted July 24, 2015, on one count of engaging in a pattern of corrupt activity, ten counts of breaking and entering, and three counts of safecracking. He was convicted on all counts except for two charges of breaking and entering. In his First Ground for Relief in habeas corpus, Blankenship claimed there was insufficient evidence to convict him on Count VII which charges breaking and entering at the Delaware County Humane Society. The Ohio Fifth

1

District Court of Appeals decided this claim on direct appeal, employing the correct Supreme Court precedent, *Jackson v. Virginia*, 443 U.S. 307 (1979). The issue in habeas, then is whether the Fifth District's decision was contrary to or an objectively unreasonable application of *Jackson*. *Brown v. Payton,* 544 U.S. 133 (2005); *Bell v. Cone*, 535 U.S. 685 (2002); *Williams v. Taylor*, 529 U.S. 362 (2000).

The key finding of the Fifth District was, "In the case at bar, ample circumstantial evidence existed to allow the jury to conclude that Blankenship and Creech were the individuals who gained access to the Delaware County Humane Society on February 10, 2015." *State v. Blankenship,* 2017-Ohio-7267 ¶ 33 (Ohio App. 5th Dist. Aug. 16, 2017), appellate jurisdiction declined, 151 Ohio St. 3d 1512 (2018)("*Blankenship I*"). The Fifth District then recited all the circumstantial evidence in the record that supported that conclusion. *Id.* at ¶¶ 34-39. The Magistrate Judge reviewed the opinion of the Fifth District, applying AEDPA deference, and found it was not an objectively unreasonable application of *Jackson* (Report, ECF No. 14, PageID 1411-14).

In his Objections, Blankenship concedes the State sufficiently proved someone broke into the Delaware County Humane Society on the date charged, but alleges "the State failed to present even a scintilla of evidence that Petitioner had any involvement in that offense." (Objections, ECF No. 17, PageID 1423.)

Blankenship asserts both the Fifth District and the Magistrate Judge failed to address the substantive elements of breaking and entering under the relevant Ohio statute, Ohio Revised Code § 2913.01. Not so. In *Blankenship I* the Fifth District wrote:

> {¶ 26} To be convicted of breaking and entering pursuant to R.C. 2911.13(A) the trier of fact would have to find beyond a reasonable doubt that Blankenship by force, stealth, or deception trespassed in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.

2

In the next three paragraphs it recited the testimony from Misty Bay proving the required elements, which were not really contested. The state court focused its opinion on the key question of identity. Blankenship does not now contest that the evidence was sufficient to prove all the elements; he himself speaks merely to proof of identity (Objections, ECF No. 17, PageID 1423-24).

The evidence identifying Blankenship as to Count VII was, as the Fifth District realized, all circumstantial. To summarize that evidence, there were sixteen break-ins at sixteen different Ohio animal shelters in a one-month period (January 19, 2015, to February 18, 2015). Co-defendant Corby Creech and his girlfriend Toni Beers lived with Blankenship during the relevant period of time and both testified to the pattern of the crimes, relevant identifying factors, and the lack of any legitimate income to support the household.[1] Creech pleaded guilty to the Delaware County break-in, although by the time of Blankenship's trial, he purported not to remember his participation and he did not testify directly that Blankenship participated. This outbreak of break-ins ceased completely when Blankenship and Creech were arrested.

Blankenship's position seems to be that he cannot be convicted of the Delaware County break in unless there is some direct evidence of his participation. But that is not the law. Ohio law, as the Fifth District pointed out, permits conviction on circumstantial evidence alone. *Blankenship I*, 2017-Ohio-7267 at ¶ 31, citing "'[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight,*[2] 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75 (2005), quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990).

Blankenship points to no federal constitutional law requiring direct evidence of identity

---

[1] None of the three was gainfully employed.
[2] *McKnight* is a capital case pending before this Court in which the Ohio Supreme Court found circumstantial evidence was sufficient to prove McKnight committed murder.

and in fact federal law is to the contrary. Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt. *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011); *United States v. Kelley,* 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992). "[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960), citing *Rogers* v. *Missouri Pacific R. Co.*, 352 U.S. 500, 508, n. 17 (1957).

Blankenship's First Objection should be overruled.

**Second Objection: Conviction Based on an Unjustified Inference**

Part of the evidence used to convict Blankenship was cell site location data which showed Blankenship's or co-conspirator Creech's cell phone was in the vicinity of eight of break-ins when the break-ins occurred. *Blankenship I*, 2017-Ohio-7267, ¶ 34. Blankenship objects that the Report concluded that

> [T]he State is entitled to an inference that Petitioner's cell phone was on his person at all relevant times. This erroneous inference then leads to the erroneous conclusion that because the Petitioner's cell phone was found to be in the general vincinity [sic] of some of the break-ins, it could be inferred to have been been [sic] present at all of the break-ins. It is this stacking of inferences that the Magistrate Judge embraces as a substitute for actual evidence of guilt. This stacking of inferences falls well short of the standard espoused in *Jackson v. Virginia,* 443 U.S. 307 (1979).

(Objections, ECF No. 17, PageID 1425.)

The relevant language in the Report to which Blankenship objects is

> But if Blankenship's cell phone, presumably on his person, was near half the break-ins at animal shelters in a one month period, it is a reasonable inference that he was present at the other half. The case is not about break-ins at random unoccupied buildings over an extended period of time, but at a particular kind of building sixteen times in a one-month period.

(Report, ECF No. 14, PageID 1412.)

Again, as with the First Objection, Blankenship asserts the circumstantial evidence is insufficient to identify him as breaking in at the Delaware County site. He does not dispute the reasonableness of the first inference – from the presence of a cell phone known to be owned and used by a particular person to the presence of that person where the cell phone was located. It is common knowledge, on which the jury could rely, that people purchase and carry cell phones on their persons so as to be able to make and receive telephone calls, take pictures and video, engage with social media, etc. while away from land lines[3]

Blankenship presented no evidence at trial to combat this inference. He did not testify that he did not have his cell phone on his person on the occasions when it was located near an animal shelter break in in January-February, 2015. Nor did he or anyone else testify to his having a pattern of leaving his cell phone at home or lending it to some other person.

The second inference is more difficult: from presence at or near eight break ins to presence at others.[4] But supporting that inference are the testimonies of Creech and Beers, the similar modus operandi of the breaks-ins, and additional identifying factors seen on surveillance video (always two males as perpetrators, the sometimes presence of an orange walkie-talkie, the sometimes presence of a white car similar to Blankenship's) support the inference.

Here again Blankenship presented no evidence at trial to combat the inference. No one

---

[3] The devices in question are ordinarily referred to as "mobiles" in British English.
[4] Although sixteen break-ins happened, Blankenship was only indicted on ten and convicted on eight.

5

else was identified as having broken into animal shelters in any of the relevant counties during the relevant time period. No evidence suggested any other co-conspirator for these break-ins besides Blankenship and Creech. The white car in the surveillance video was not shown to belong to someone else or be of a different kind from Blankenship's.

Blankenship will likely object that he had no burden of proof at trial. That is of course true. But when damning evidence is presented against a person and he has an opportunity to respond but does not, it could be said he has assumed the risk that the jury will find the evidence against him persuasive beyond a reasonable doubt. The fact that an inference was not rebutted by someone who had a grave interest in the outcome and an opportunity to rebut supports the inference that he did not having rebutting evidence to give.

Blankenship presents no authority for the proposition that a conviction based in part on an inference upon an inference is not supported by sufficient evidence. His sole citation is to *United States v. Sliwo*, 620 F.3d 630 (6th Cir. 2010), a direct appeal case, where Sliwo's conviction for conspiring to distribute marijuana was overturned because there was no evidence he knew marijuana was involved in the conspiracy. In his *Sliwo* opinion, Judge Clay in turn cites *Direct Sales Co. v. United States,* 319 U.S. 703, 711 (1943), another direct appeal case, where the Supreme Court noted that a conspiracy is not to be proved "by piling inference upon inference," but upheld the conspiracy conviction of a drug manufacturer for sale of large quantities of morphine to a physician after mass advertising and bargain-counter discounts. There is no discussion of any general rule against stacking inferences, much less one of constitutional stature.

The Ohio Supreme Court has made the distinction, critical for this case, between an inference on an inference and a parallel inference: "A trier of fact may not draw an inference based entirely upon another inference, unsupported by any additional fact or another inference from other

6

facts. However, an inference based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in." *State v. Cowans,* 87 Ohio St. 3d 68, 78 (1999), quoting *Hurt v. Charles J. Rodgers Transp. Co.,* 164 Ohio St. 329, 332 (1955). *See also Sobolovitz v. Lubric Oil Co.*, 107 Ohio St. 204 (1923). Here the inference that Blankenship participated in break-ins where his cell phone was not shown to be present is based on a host of other evidence: similar modus operandi and targets, and the testimony of Creech and Beers.

Blankenship's Second Objection should be overruled.

**Third Objection: Distinction Between "Reasonable Speculation" and "Proof Beyond a Reasonable Doubt."**

Petitioner's Third Objection is "to the conclusion of the Magistrate Judge that the distinctions between 'reasonable speculation' and 'beyond a reasonable doubt' set forth in *Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir. 1981) and *Hopson v. Foltz*, 818 F.2d 866 (6th Cir. 1987)(unpublished) are inapplicable in post-AEDPA cases." (Objections, ECF No. 17, PageID 1426.) To the contrary Blankenship cites *Brown v. Palmer*, 441 F.3d 347 (2006).

In *Fuller*, the district court, siting in habeas, had conducted a *de novo* review of the evidence and found it was insufficient to support a conviction for felony murder. The Sixth Circuit applied the *Jackson* standard for evaluating a sufficiency of the evidence claim. 662 F.2d at 423. The opinion does not indicate what standard of review the court applied to the District Court decision, but it affirmed the grant of habeas relief.

Because it is unpublished, *Hopson* is not precedential in the Sixth Circuit. However, it appears from the reported decision that the circuit court reviewed the evidence *de novo* and found it was insufficient, applying the *Jackson* standard.

7

The two cases on which Blankenship relies do not purport to create any distinction between conviction of "reasonable speculation" and proof beyond a reasonable doubt and the Report does not suggest that "reasonable speculation" will support a conviction. Proof of crimes beyond a reasonable doubt has been the standard in both Ohio and federal law from the beginning of the Republic. In *Jackson* and *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that standard of proof was binding on the States by virtue of the Due Process Clause of the Fourteenth Amendment. Proof satisfying the *Jackson* standard has been constitutionally required since that decision was handed down.

The relevant distinction between this case and *Fuller* and *Hopson* is between pre- and post-AEDPA review. At the time *Fuller* and *Hopson* were decided, federal habeas courts were permitted to review state court decision *de novo*. That is to say the habeas court could take a fresh look at the evidence to decide whether it met the *Jackson* standard. The Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") changed that dramatically. Habeas courts may now reverse a state court decision on a question of federal constitutional law only if the state court decision is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent or resulted in a decision that was based on an unreasonable determination of the facts based on the evidence presented in the state courts. 28 U.S.C. § 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson* and then to the appellate court's consideration of that verdict, as commanded by the AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(*en banc*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012).

*Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), relied on by Blankenship, is not to the contrary. In that case the district court had granted relief on an insufficiency of the evidence claim. The circuit court clearly affirmed that deferential review of the state court decision was required, but upheld the district court's grant of habeas relief nonetheless. In doing so it acknowledged that the AEDPA had changed the law, but found the *Fuller* and *Hopson* courts' distinction between "reasonable speculation" and "proof beyond a reasonable doubt" was useful.

The Report does not reject that distinction. However, post-AEDPA, a federal habeas court cannot apply the distinction *de novo*. In other words, this Court cannot grant habeas relief because it concludes the state courts were wrong in evaluating the evidence. Instead, it can grant relief only if it finds the state court decision was "objectively unreasonable."

> [A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *Harrington v. Richter*, 562 U. S. [86, 103,] 131 S.Ct. 770, 178 L.Ed.2d 624, 641 (2011).

*White v. Woodall*, 572 U.S. 415, 419-20 (2014)(quotation marks omitted).

Blankenship's Third Objection should be overruled.

**Fourth Objection: Construction of Ohio RICO Statute**

Blankenship objects that the Report reached "the legal conclusion . . . that the State of Ohio was not required to prove the existence of an enterprise in order to convict under the state RICO statute." (Objections, ECF No. 17, PageID 1426.)

The claim that the proof did not establish the existence of an enterprise within the meaning

9

of the Ohio RICO statute was not raised on direct appeal. Instead it was first raised as a claim of ineffective assistance of appellate counsel in that appellate counsel did not raise this claim on direct appeal (Application to Reopen, State Court Record, ECF No. 4, Ex. 16). The Fifth District decided this claim on the merits, so the issue in habeas is whether its decision is or is not an objectively unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

In his Traverse, Blankenship relied extensively on federal case law defining the "structure" element of the federal RICO statute. The Report rejected that reliance because Ohio employs a different standard, set forth in *State v. Beverly*, 143 Ohio St. 3d 258 (2015). This habeas court is of course bound by the state court's interpretation of state law. *Bradshaw v. Richey,* 546 U.S. 74 (2005). The Objections do not quarrel with this conclusion, although Blankenship argues generally that this pattern of petty property crimes is not what the General Assembly intended to punish in enacting the Ohio RICO statute. Once again, that is a question of Ohio law on which we are bound by the Fifth District's decision.

The gravamen of Blankenship's argument in his Fourth Objection is that there was insufficient evidence that this series of crimes was structured or constituted an enterprise. He asserts, "[f]ar from establishing the existence of an enterprise or a pattern of criminal activity, the evidence at trial established that there existed a loosely associated group who engaged in random crimes at random times in a haphazard fashion." (Objections, ECF No. 17, PageID 1427.) He says this was "random criminal activity" and involved "crimes of opportunity." *Id.* To the contrary, the co-conspirators all lived together, the targets were all animal shelters, the crimes were all of the same type (break-ins of unoccupied structures), and the co-conspirators had to drive considerable distances to get to their targets of opportunity. Blankenship's post-hoc characterizations are unconvincing in light of the evidence.

10

However, the key issue on this habeas corpus claim is not whether there was sufficient evidence to satisfy the Ohio RICO statute, but whether an assignment of error making that claim on direct appeal was likely to have succeeded. Importantly, "[t]he best proof that there was no ineffective assistance of appellate counsel here is that the same court which had recently evaluated the evidence in the case concluded that the proposed assignment of error would not have been persuasive." (Report, ECF No. 14, PageID 1418.) In other words, because the court which would have to have been persuaded by the assignment of error decided it would not have been and that it was not ineffective assistance of appellate counsel to fail to raise the assignment.

Therefore, Blankenship's Fourth Objection should be overruled.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again concludes the Petitioner should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 19, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).